IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARIE WEIR,

                Plaintiff,

  v.                                                                       ORDER

CAROLYN W. COLVIN,                                         15-cv-532-jdp
Acting Commissioner of Social Security,

                Defendant.

---

      Plaintiff Marie Weir seeks judicial review of a final decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, finding her not disabled within the meaning of the Social Security Act. The court heard oral argument on July 26, 2016. For reasons explained during oral argument and summarized here, the court will deny Weir's motion for summary judgment and affirm the Commissioner's decision.

      As discussed at oral argument, the ALJ made two errors, but both were harmless. First, the ALJ did not adequately justify his decision to reject a limitation that Weir's treating physician, Steven R. Kirkhorn, MD, thought necessary. Second, the ALJ did not reconcile a conflict between the vocational expert's (VE's) testimony and the Dictionary of Occupational Titles (DOT).

**A. Dr. Kirkhorn's limitations**

      When determining Weir's residual functional capacity (RFC), the ALJ considered opinions from three physicians: Dr. Kirkhorn (a treating physician), and Dr. Shaw and Dr. Byrd (non-examining state agency consultants). R. 31.[1] The ALJ afforded all three

---

[1] Record cites are to the administrative transcript, located at Dkt. 8.

opinions great weight. R. 32. The medical evidence in the record demonstrated that Weir suffers from a disc herniation and an L5 nerve root compression, impairments severe enough to limit her to less than a full range of sedentary work with a sit/stand option. *Id.* The ALJ explained that Dr. Kirkhorn's specific postural limitations were redundant because sedentary work would not require Weir to climb, squat, crawl, bend, or twist beyond the tolerances that he had noted. *Id.* But the ALJ explicitly rejected Dr. Kirkhorn's opinion that Weir would need to use cane because Weir's testimony regarding her daily activities indicated that she does not need a cane. *Id.*

The ALJ did not adequately justify his decision to drop Dr. Kirkhorn's cane limitation. The ALJ rejected the cane limitation with a quick reference to Weir's ability to perform minor household chores without her cane. But the ALJ misunderstood Weir's testimony. Weir testified that she uses a cane to get around, every day. R. 66-67. She testified that she does not use a cane in the house because she is able to support herself by holding onto the walls and furniture. R. 67. Weir did *not* testify that she is able to get around the house and perform household work without any assistance.

The record does not support the ALJ's decision to drop the cane limitation. But Weir appears to concede that the error is harmless. At the ALJ hearing, Weir's counsel posed several of his own hypotheticals to the VE, one of which mirrored Dr. Kirkhorn's opinion exactly, including the cane limitations. R. 86. The VE considered the limitations—including the cane—and testified that "the jobs [she] identified in hypothetical one would be appropriate within these limitations." R. 87. Accordingly, even if the ALJ had adopted all of Dr. Kirkhorn's limitations, the result would have been the same. The court will affirm this aspect of the ALJ's decision as harmless error.

**B. VE testimony**

At the hearing, the VE testified that a hypothetical individual with Weir's RFC (and a hypothetical individual with an RFC that accommodates all of Dr. Kirkhorn's limitations) would be able to perform work as a telephone solicitor, a routine office clerk, and a cashier. R. 82, 87. The VE explicitly acknowledged that the DOT does not classify "cashier" as sedentary work, but the VE stated that the position is sedentary in several environments, including in parking lots, dining rooms, cafeterias, and restaurants. Although the VE explicitly identified a conflict between the DOT and her testimony, she did not explain her reasons for departing; she did not even vaguely reference her own experience, and the ALJ did not inquire further. The ALJ adopted the VE's opinions. R. 34.

An ALJ is entitled to accept a VE's unchallenged conclusions unless there are apparent conflicts between the VE's testimony and the DOT. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). "Ruling 00-4p does not require ALJs to wholly disregard a VE's testimony because part of it disagrees with the DOT, but Ruling 00-4p does require ALJs to resolve discrepancies between the two before relying on the conflicting testimony." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011); *see also Overman*, 546 F.3d at 464 ("An ALJ is free to accept testimony from a VE that conflicts with the DOT when, for example, the VE's experience and knowledge in a given situation exceeds that of the DOT's authors, or when the VE's contrary testimony is based on information in 'other reliable publications[.]'").

Here, the VE explicitly flagged her departure from the DOT. But the ALJ never asked the VE to explain her reasons for departing before he adopted her conclusions. "When there is an apparent conflict, ALJs are required to obtain reasonable explanations for the conflict." *Weatherbee*, 649 F.3d at 570. And, to add to the oversight, the ALJ adopted the VE's

3

testimony as "consistent with the information contained in the Dictionary of Occupational Titles." R. 34. Even assuming that this line in the ALJ's decision is an unintentional misstatement, the ALJ erred when he did not obtain an explanation for the VE's conflicting opinion before adopting it.

But again, although the ALJ erred in this respect and failed to reconcile the conflict, the error was harmless. Even if the 3,000 sedentary cashier jobs were not available to Weir, the VE testified that 3,500 telephone solicitor jobs and 2,000 routine office clerk jobs were available to her. *See Coleman v. Astrue*, 269 F. App'x 596, 602 (7th Cir. 2008) (An ALJ's failure to inquire about a conflict regarding one type of job the VE identified amounts to harmless error if the VE identified other jobs in the national economy available to the claimant consistent with the DOT; "1,500 jobs would still be available to a person with Coleman's limitations. We have held that 1,400 jobs falls within the parameters of a sufficiently significant occupational base."). Here, Weir does not identify any problems with the VE's testimony regarding the telephone solicitor position (with the exception of the source of the numbers, which does not amount to an error, as discussed next). Any potential errors associated with the cashier position (or even the routine office clerk position) are necessarily harmless.

However, Weir also takes issue with the VE's testimony regarding the number of jobs available to her in Wisconsin. The VE testified that she relied, in part, on the Occupational Employment Statistics, published by the Bureau of Labor Statistics. R. 92. Using those raw numbers, the VE relied on her own experience to offer rough estimates of the number of jobs available to Weir in Wisconsin. R. 93.

As this court has recognized in the past, the Seventh Circuit has expressed skepticism toward the standard methodology that VEs use to calculate the number of jobs available to claimants. *See, e.g., Voigt v. Colvin*, 781 F.3d 871 (7th Cir. 2015). And here, the VE was less than clear about the source of her numbers; she even conceded that the numbers were only rough estimates based on some unspecified "methodology." R. 93.

The Seventh Circuit recently articulated concerns with VE testimony, both in terms of calculating the number of jobs available in the national economy and relying too heavily on vague references to their own "experience" to support their testimony. *Hill v. Colvin*, 807 F.3d 862, 872 (7th Cir. 2015) (Posner, J., concurring) ("In short, the vocational expert's testimony was worthless—and this apart from the apparent arbitrariness of his numerology. It is time the Social Security Disability Office cleaned up its act."); *see also Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2015) ("We have recently expressed concern with the source and validity of the statistics that vocational experts trot out in social security disability hearings[.]" (citing *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014); *Herrmann v. Soc. Sec. Admin.*, 772 F.3d 1110, 1112-14 (7th Cir. 2014))). Weir's argument is well taken. But Weir's criticism of the VE's methodology is not a basis for remand until appellate precedent instructs that relying on the methodology is reversible error.[2]

Individuals, like Weir, who are able to perform less than a full range of sedentary work have extremely limited employment prospects. It is particularly important that the VE's estimate of the positions available to such limited claimants be scrupulously accurate. The

---

[2] At oral argument, Weir's counsel pointed the court to a recent Seventh Circuit decision, *Taylor v. Colvin*, No. 15-3529 (7th Cir. July 20, 2016), that supposedly establishes this precedent. But the decision simply notes the Seventh Circuit's ongoing concerns with VE testimony concerning the number of jobs available, and it does not overrule any precedent in this circuit.

VE's conclusory testimony here passes muster under current law, but it is not genuinely persuasive.

ORDER

IT IS ORDERED that the decision of Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff Marie Weir's application for disability insurance benefits and supplemental security income is AFFIRMED and plaintiff's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered August 1, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge